IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESSINTIAL ENTERPRISE SOLUTIONS, LLC, | : | No. 1:22cv1507 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| | : | |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, | : | |
| Defendants | : | |

**MEMORANDUM**

During the nationwide economic crisis brought on by the coronavirus pandemic, Congress issued a mandate to the Defendant United States Small Business Administration ("SBA") under the CARES Act[1] to make hundreds of billions of dollars in Paycheck Protection Program ("PPP") loans available to American small businesses.  See 15 U.S.C. § 636(a)(36); (Doc. 34, Defs.' Stmt.

_____

[1] The Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).

Mat. Fact ¶ 1).[2]  Loans granted under the PPP may be forgiven if their proceeds were used for certain purposes. 15 U.S.C. § 9005(b).  Plaintiff Essintial Enterprise Solutions, Inc. received a PPP loan and then sought forgiveness. Although the SBA did forgive part of the loan, it denied the request for total forgiveness.  Plaintiff filed the instant complaint seeking review of the SBA's decision to deny complete forgiveness. Before the court for disposition are cross-motions for summary judgment. The parties have briefed their respective positions, and the matter is ripe for adjudication.

## Background

Plaintiff Essintial applied to receive a PPP loan in the amount of $7,028,000.00 from Berkshire Bank ("the Lender").  (Doc. 26, Pl.'s SOF at ¶ 1). The Lender approved the Loan application on April 10, 2020, and at the time, the SBA made no objection.  (Id. ¶ 3).  The Lender funded the Loan in the amount applied for on April 20, 2020.  (Id. ¶ 4).  Plaintiff alleges that it used the proceeds of the Loan to protect the continued employment of its employees.  (Id. ¶ 5).

On January 6, 2021, plaintiff applied for full forgiveness of the Loan.  (Id. ¶ 6).  The Lender approved the forgiveness application for full forgiveness of the Loan, and in turn, submitted it to the SBA for approval on January 18, 2021.  (Id.

_____

[2] The court will cite to portions of the Statements of Material Fact which the parties appear to agree upon.

¶ 7). In its Final Decision on the application for forgiveness, the SBA found the plaintiff ineligible for full forgiveness of the Loan and that only $3,469,174.00 of the Loan would be forgiven. (Id. ¶ 8). The basis for the lower amount of forgiveness was that the original Loan included compensation to independent contractors which the SBA concluded could not be substantiated as an eligible payroll cost. (Id. ¶ 9). Plaintiff appealed the SBA's final decision through the United States SBA Office of Hearings and Appeals ("OHA"). During this appeal, the SBA increased the amount of forgiveness by $233,837.60, thus bringing the total amount of forgiveness to $3,703,011.60 and an unforgiven amount of $3,325,788.40. (Id. 11).

Ultimately, the OHA denied plaintiff's appeal of the SBA's final decision and affirmed the SBA's final decision. (Doc. 3-2, Compl. Exh. 4, Decision of Clifford Sturek, Administrative Judge). Plaintiff filed a Petition for Reconsideration with the OHA. (Doc. 3-3, Compl. Exh. 5). The OHA denied the Petition for Reconsideration. (Doc. 3-4, Compl. Exh. 6). Thirty days after the plaintiff's receipt of the Reconsideration Decision, it became the final decision of the SBA which entitled plaintiff to file the instant action in this court for review of the SBA's decision. See 13 C.F.R. § 134.1211(c) and (g). The plaintiff's complaint contains the following counts:

3

Count I – Claim for Declaratory and Injunctive Relief on the basis that the defendants acted without authority in defining payroll costs in a manner inconsistent with the CARES Act;

Count II – Claim for Declaratory Relief regarding the retroactive application of the SBA's Interim Final Rule;

Count III – Application for Temporary Restraining Order and Temporary or Permanent Injunction; and

Count IV – Claim for Attorney's Fees under the Equal Access to Justice Act.

At the case management conference, the court set deadlines for the disclosure of the final administrative record and objections thereto and for the filing of motions for summary judgment by each party.  (Doc. 22, Case Management Order).  In due course both parties moved for summary judgment and briefed their respective positions.  Since the briefing of the summary judgment motions, the plaintiff has filed three notices of supplemental authority (Docs. 38, 41, and 42), bringing the case to its present posture.[3]

---

[3] The Honorable Jennifer P. Wilson transferred this case to the undersigned on November 7, 2023.

**Jurisdiction**

This court has federal question jurisdiction pursuant 28 U.S.C. § 1331 because this case arises under the Constitution, laws, or treaties of the United States, namely the CARES Act and the Administrative Procedures Act, 5 U.S.C. §§ 551 et seq.

**Standard of Review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

At issue with the instant summary judgment motions is a decision from the SBA, a federal agency. The Administrative Procedure Act ("APA") provides for judicial review of federal agency actions. 5 U.S.C. § 702.  It also sets forth the extent of judicial authority to review such agency action.  The APA provides that a reviewing court shall:

> hold unlawful and set aside agency action, findings, and conclusions found to be –
>
> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> **(B)** contrary to constitutional right, power, privilege, or immunity;

6

**(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

**(D)** without observance of procedure required by law;

**(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

**(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2).  In reviewing a federal agency's decision, such as an SBA decision, the court cannot substitute its own policy judgment for that of the agency, but the court must ensure that "the agency . . . acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."  See F.C.C. v. Prometheus Radio Project, 592 U.S. 414, 423 (2021).

**Discussion**

The instant matter involves a PPP loan. "The PPP is a . . . loan program administered under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)).  Its purpose [was] to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms."  Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin., 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020).  The law provides for forgiveness of such loans for small business borrowers who used most of the loan proceeds for "payroll and certain

7

other expenses like mortgage [interest] or rent payments and utility expenses."

15 U.S.C. §§ 636m(a)(11) and 636m(b).  The law requires the SBA to reimburse

the private lender for any PPP loan determined to be eligible for forgiveness.  15

U.S.C. § 636m(c)(3).  Forgiveness applies to the portions of loans used for

"payroll costs" as that term is defined in the CARES Act.  The principal issue in

this case is whether plaintiff properly calculated its payroll costs in applying for

the Loan and whether full forgiveness should have been provided.

Less than a week after Congress passed the CARES Act, the SBA, with

the Department of the Treasury, issued the First PPP Interim Final Rule ("IFR").

The SBA posted the rule on the Department of the Treasury website on April 2,

2020.  This First PPP IFR's purpose was to administer the CARES Act by setting

forth borrower eligibility and application requirements for PPP loans.  See

generally 85 Fed. Reg. 20811 et seq.  This rule provides that payroll costs do not

include payments to independent contractors.  Id.

As noted above, plaintiff's complaint is comprised of four separate counts.

Count I contends that the SBA's denial of full forgiveness of the Loan was

arbitrary, capricious, and contrary to law.  Count II avers that the SBA applied the

IFR retroactively to the Loan.  Such retroactive application of the IFR is contrary

to the law according to the plaintiff.  Count III seeks a temporary restraining order

and a temporary or permanent injunction.  Finally, Count IV seeks attorney's

fees. For an orderly disposition of the issues found in the motions for summary judgment the court will address Count II first and then Counts I, III, and IV in turn.

## A. Count II – Retroactive Application of the IFR

Count II of plaintiff's complaint alleges that the SBA committed legal error by applying the IFR to plaintiff's loan retroactively. (Doc. 1, Compl. ¶¶ 79-86). The SBA set the effective date of the IFR as April 15, 2020. Vol. 85 Fed. Reg., No. 73 at 20811. The IFR itself indicates that it has "no preemptive or retroactive effect." Id. at 20817. Plaintiff applied for its loan on April 4, 2020, and received approval for the loan on April 10, 2020, prior to the effective date of the IFR. (Doc. 26, Pl.'s SOF at ¶¶ 1, 3).

If the SBA did retroactively apply the IFR, then several issues are presented. If the court finds that the SBA applied the IFR retroactively and that such application is lawful, then the court must determine whether the SBA acted within its statutory authority in enacting the IFR. That is, the court would have to determine whether the IFR is valid. If the court concludes that the SBA did not apply the IFR retroactively to the Loan, then a statutory analysis must be made to determine if the SBA's interpretation of the CARES Act is appropriate. Thus, the issues are either the validity of the IFR or the validity of the SBA's interpretation of the CARES Act without reference to the IFR.

First, the court will address whether the SBA retroactively applied its rules to plaintiff's Loan. As noted, plaintiff applied for forgiveness of the Loan, and upon initial review, the SBA denied full forgiveness on the basis that plaintiff included independent contractors in its payroll costs. (Doc. 2, at ECF 21). The denial does not mention the IFR. (Id.) Plaintiff then appealed to the OHA. It appears that during plaintiff's OHA appeal, the SBA argued that the IFR applied to plaintiff's Loan. As such, the SBA took the position that plaintiff could not include payments to independent contractors as part of its forgivable payroll costs. The OHA decision does not clearly state that the IFR applies to the Loan. Rather, the decision indicates that the IFR clarified the SBA's position as to how independent contractors would be treated in determining countable payroll costs. (Doc. 3-2, OHA Decision at ECF 17-18). Thus, pre-IFR and post-IFR, the SBA's position was that independent contractor expenses could not be included as forgivable payroll costs. In other words, the SBA did not need to rely on the IFR to deny full forgiveness because its position pre-IFR was that payments to independent contractors were not included in payroll costs. Plaintiff filed a motion for reconsideration of the OHA's initial decision. The OHA denied the motion for reconsideration. (Doc. 3-4). This decision, like the initial OHA, does not explicitly apply the IFR retroactively to the Loan.

Defendants' initial brief does not appear to directly address the retroactivity argument plaintiff has raised. In its reply brief, however, defendants indicates that the IFR had no impermissible retroactive effect because the rule simply explained pre-existing law, that is, it explained the definition of "payroll costs" set forth in the CARES Act. And in any event, the SBA's reliance on the IFR at most constituted harmless error because the IFR interpretation of the term "payroll costs" under the CARES Act was the correct one.

The court's review of the record indicates that the SBA did not retroactively apply the IFR to plaintiff's application for loan forgiveness.[4] It merely applied its interpretation of the CARES Act, which, even prior to the effective date of the IFR, meant that independent contractor payments could not be included in payroll costs. As the SBA did not apply the IFR, the court need not determine whether the SBA properly employed its authority in adopting the IFR. Rather, the court's role is to review the CARES Act and determine whether the SBA's position – prior to the enactment of the IFR - is a valid construction of the CARES Act with regard to payments to independent contractors.[5]

---

[4] If the IFR had been retroactively applied, the SBA would have committed error. Retroactive rulemaking by an agency is presumptively unauthorized. <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988). Moreover, as stated above, the IFR itself indicates that it is not retroactive. Vol. 85 Fed. Reg., No. 73 at 20817.

[5] Although it may appear that the court is explaining a difference without a distinction, it is important to distinguish whether the court needs to rule upon the propriety of the IFR or whether it needs to construe the CARES Act separate from the IFR. The standards the court would apply is different for each.

## B. Count I – Declaratory Judgment and Injunctive Relief

Count I of plaintiff's complaint is a claim for declaratory judgment and injunctive relief under 5 U.S.C. § 706(2)(A), (C).  (Doc. 1, ¶¶ 60-78).  This count asserts that the defendants acted without authority when it defined payroll costs in a manner inconsistent with the definition set forth in the CARES Act.[6]

The parties' summary judgment motions call upon the court to construe the CARES Act.  Such a statutory analysis proceeds in several steps.  See e.g., B&G. Constr. Co., Inc. v. Office of Workers' Comp. Progs., 662 F.3d 233, 248-49 (3d Cir. 2011).  First, the court examines the plain language of the statute.  Id. at 248.  If the language is unambiguous the court rarely needs to inquire into the meaning of the statute beyond examining its wording.  Id.

Second, further inquiry may be needed "where the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters, or where the result would be so bizarre that Congress could not have intended it."  Id. (internal quotation marks and citation omitted).  "It is inappropriate, however, to reference other statutory provisions in order to create an ambiguity where none would otherwise exist."  In re Phila. Newspapers, LLC, 418 B.R. 548, 560 (E.D. Pa. 1989) (citing Dir., Off. of Workers' Comp. Programs

---

[6] Plaintiff discusses the remedy it seeks and the substantive legal issues in the same count. The court will here discuss the substance of Count II and the remedy will be discussed below.

v. Sun Ship, Inc., 150 F.3d 288, 292 (3d Cir.1998) (finding that related statutory sections could not be used to create an ambiguity where the language was clear)).

## 1. Plain Language of the Statute

As noted, the first step in a statutory analysis is to examine the plain language of the statute.  The United States Supreme Court has explained that when construing statutes, "courts must give effect to the clear meaning of the statutes as written[,] . . . giving each word its ordinary, contemporary, common meaning." Star Athletica, L.L.C. v. Varsity Brands, Inc., 580 U.S. 405, 414 (2017) (internal citations and quotation marks omitted). When a court interprets a statute its goal is to effectuate Congress's intent. S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 257 (3d Cir. 2013).  To ascertain whether Congress had an intention on the precise question at issue, the court employs the "traditional tools of statutory construction." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984).[7] "The preeminent canon of

_____

[7] The parties' briefs address the standard of review for agency decisions set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). This standard contains two steps.  First the court determines whether a statute is silent or ambiguous with regard to a specific issue.  If it is silent or ambiguous, then the court proceeds to the second step, which is to provide deference to the agency's interpretation of the statute and the court must determine whether the agency's interpretation is a "permissible construction." Id. at 866.  After the briefing in this case was completed, however, the United States Supreme Court overruled Chevron with regard to providing deference to the agency's interpretation. Loper Bright Enters. v. Raimondo, - - U.S. - -; 144 S.Ct. 2244 (2024).   The

statutory interpretation requires [the court] to presume that the legislature says in a statute what it means and means in a statute what it says there." BedRoc Ltd., LLC v. U.S., 541 U.S. 176, 183 (2004) (internal quotation marks and citations omitted). Accordingly, the court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." Id.

The court, thus, determines if the statute is ambiguous or unambiguous. The court's analysis proceeds no further if the language is unambiguous. See id. To determine if the language is unambiguous, the court reads "the statute in its ordinary and natural sense." Da Silva v. Att'y Gen. U.S., 948 F.3d 629, 635 (3d Cir. 2020) (quoting In re Phila. Newspapers, 599 F.3d 298, 304 (3d Cir. 2010)).

When a statute's meaning is unambiguous or plain, the court enforces it according to its terms. "The language of a statute is plain when it admits of no more than one meaning and in such a case the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion." In re Genesis Health Ventures, Inc., 402 F.3d 416, 421 (3d Cir. 2005).

Therefore, the court will review the language of the CARES Act and determine if its language unambiguously includes payments to independent contractors as payroll costs with respect to PPP loans.

_____

case law interpreting the first step of Chevron, however, remains instructive on the manner in which the court should determine whether or not a statute is ambiguous.

14

The language at issue here is found in 15 U.S.C. § 636(a)(36)(A)(viii) which provides as follows:

(viii) the term "payroll costs" –

(I)    means

(aa) *the sum of payments of any compensation* with respect to *employees* that is a –

> (AA) salary, wage, commission, or similar compensation;
> . . .
> *and*

(bb) *the sum of payments of any compensation to* or income of a sole proprietor or *independent contractor* that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 . . .

15 U.S.C. § 636(a)(36)(A)(viii) (emphasis added).

This definition can be paraphrased as follows: "Payroll costs" means the sum or payments of any compensation with respect to employees and the sum of payments of any compensation to an independent contractor. Upon initial review, it appears that the language is unambiguous.

The statute provides the above definition of the term at issue, "payroll costs". "When a statute includes an explicit definition, [the court] must follow that definition, even if it varies from that term's ordinary meaning." Stenberg v. Carhart, 530 U.S. 914, 942 (2000). "Moreover, 'where the statutory language is unambiguous, the court should not consider statutory purpose or legislative

15

history,' In re Phila. Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010), because

we operate under the 'assumption that the ordinary meaning of that language

accurately expresses the legislative purpose.' " S.H. ex rel. Durrell, 729  F.3d at

257 (quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194

(1985)).

Plaintiff argues the language is clear and unambiguous such that a plain

reading of the statute reveals that the definition of "payroll costs" includes

payments made to employees and payments to independent contractors.  It

appears that plaintiff is correct.  The language of the statute itself indicates that

compensation to employees and compensation to independent contractors are

both included in the definition of "payroll costs."

Defendants argue that the language is in fact ambiguous.  The defendants'

argument would be compelling if the court could find the word "and" is

ambiguous as used between sections (aa) and (bb) of the CARES Act definition

of payroll costs.   The Third Circuit Court of Appeals has explained that the usual

meaning of the word "and" "is conjunctive, and unless the context dictates

otherwise, the 'and' is presumed to be used in its ordinary sense[.]" Reese Bros,

Inc. v. U.S., 447 F.3d 229, 235-36 (3d Cir. 2006).  Here, the context does not

dictate otherwise.  The language is not ambiguous.  The sole reason the

definition is in doubt is that the IFR, contrary to the plain language of the statute,

indicates that payments to independent contractors are not included in "payroll costs." Merely, drafting a regulation which is contrary to the plain language of a statute, and which cannot be applied retroactively, does not render that statute ambiguous.

Defendants do not provide a different meaning for the plain language used in the statute. Rather, their position is that the court should not examine the statutory language in isolation, but rather must review it considering other provisions of the CARES Act, and the statutory scheme as a whole. When read in this manner, it is clear, according to the defendants, that the plaintiff's reading of the statute is incorrect. In other words, to determine that the term is ambiguous and does not in fact mean what it says, defendants suggest that the statute be read as a whole, which leads to the second portion of the court's analysis.

### 2. Result of Applying the Plain Language of the Statute

Once the court determines that the words of the statute have a plain clear meaning, the next step is to determine whether "the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters, or where the result would be so bizarre that Congress could not have intended it." B&G Constr. Co, 662 F.3d at 248. Circumstances where such outcomes result are rare. Id. If such results do occur, then the statute is ambiguous, and the court proceeds to further statutory construction tools.

17

Thus, the law provides that statutory words at issue "must be read in their context and with a view to their place in the overall statutory scheme." Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 666 (2007) (internal quotation marks and citation omitted).  Furthermore, "a reviewing court should not confine itself to examining a particular statutory provision in isolation. Rather, [t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 666, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (internal citation and quotation marks omitted).  "A court must ... interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (citation and internal quotation marks omitted).  Indeed, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." Yates v. U.S, 574 U.S. 528, 537 (2015) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).

"[I]f the statutory language appears to be unambiguous, a court must look beyond that plain language where a literal interpretation would lead to an absurd result, or would otherwise produce a result 'demonstrably at odds with the

18

intentions of the drafters.' " In re Phila. Newspapers, LLC, 418 B.R. 548, 560

(E.D. Pa. 2009) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235,

242, 109 (1989)). The Third Circuit has explained: "We do not look past plain

meaning unless it produces a result demonstrably at odds with the intentions of

its drafters . . . or an outcome so bizarre that Congress could not have intended

it." Mitchell v. Horn, 318 F.3d 523, 535 (3d Cir. 2003) (internal quotation marks

and citations omitted). The court concludes that allowing an employer to include

payments to independent contractors is not an outcome so bizarre that Congress

could not have intended it. The purpose of the CARES Act was to provide "fast

and direct economic assistance for American workers, families, small

businesses, and industries." https://home.treasury.gov/policy-

issues/coronavirus/about-the-cares-act (last visited December 30, 2024). The

SBA furthered that purpose by quickly approving the Loan, which provided

assistance to American workers, specifically plaintiff's employees and

independent contractors.[8]

Defendants argue that the context of the statute as a whole indicates that

only payments to employees are allowed for forgiveness to plaintiff in this

---

[8] Plaintiff asserts that although it used payments to independent contractors in its calculation of payroll costs, it actually expended 100% of its PPP Loan proceeds on W-2 employees, and no independent contractor received PPP funds from it. (Doc. 36 at 10). One of the primary purposes of the PPP was "keeping workers paid and employed." 85 Fed. Reg. at 20,184.

instance. Defendants highlight the fact that the CARES Act permits small businesses to count the compensation they provide to their employees. 15 U.S.C. § 636 (a)(36)(A)(viii)(I)(aa). Additionally, 15 U.S.C. § 636(a)(36)(D)(ii)(I) permits independent contractors to receive their own PPP loans based upon the amount of their income or compensation. According to plaintiff's reading of the statute, an independent contractor who worked for a small business during the statutory period, as well as the small business itself, would be able to count the compensation paid to the independent contractor toward the calculation of their respective PPP loans. In effect, defendants contend that plaintiff's reading of the statute would allow for independent contractors to "double count" or "double dip".

The statutory language, however, does not permit such double dipping. With regard to payroll costs and independent contractors, the CARES Act "includes the sum of payments of any compensation to *or* income of a sole proprietor or independent contractor." 15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb). Under a plain reading of this portion of the statute, only one party, the payee or the payor is eligible for the funds. Thus, an independent contractor or a business which employs the independent contractor would not in practice be permitted to double dip when the borrower's eligibility or forgiveness application is reviewed by the lender or the SBA. Moreover, Congress required applicants to certify that they had not already received PPP loans duplicative of the ones they were

20

seeking.  15 U.S.C. § 636(a)(36)(G)(i)(IV).  Defendants' concerns of double-dipping are unfounded.

In support of its position that the context of the statute as a whole indicates that the language at issue is ambiguous, defendants also point to various cases where courts examined other portions of a statute or a statutory scheme as a whole to determine statutory language to be ambiguous.  None of the cases that defendants cite to, however, address statutes with such clear and unambiguous language from the definitional section of a statute.

For example, the defendants cite to Graham County Soil and Water Conservation District v. U.S. ex rel. Wilson, 559 U.S. 280 (2010) where the United States Supreme Court defined the term "administrative" as it appeared in the False Claims Act. 31 U.S.C. §§ 3729-3733.   The term "administrative" "may, in various contexts, bear a range of related meanings[.]"  Id. at 286 (internal quotation marks and citation omitted).  Hence, it was ambiguous.  Here, the word Congress used is "and", a word which generally has one meaning rather than having a range of related meanings.

Defendants also cite to United States v. Andrews, 12 F.4th 255, 261 (3d Cir. 2021), where the Third Circuit Court of Appeals addressed a compassionate release statute and the term "extraordinary or compelling" and whether specifically non-retroactive sentencing reductions could be read as to be

21

retroactive based on a statute passed nearly forty years earlier.  The phrase was not defined in the statute and the court examined the text, dictionary definitions and a policy statement to determine the meaning of "the otherwise amorphous phrase."  Id. at 260.  Here, the general term "Payroll Costs" is indeed defined in the statute.

A third case relied on by the defendants is National Association of Home Builders v. Defenders of Wildlife , 551 U.S. 644 (2007).  In this case, the Supreme Court interpreted a section of the Endangered Species Act  "against the statutory backdrop of the many mandatory agency directives whose operation it would implicitly abrogate or repeal if it were construed as broadly" as the court of appeals did.  Id. at 666.  Here, applying the words as written will not have the same effect.

The defendants also cite to Mejia-Castanon v. Attorney General of the United State of America, 931 F.3d 224, 233-34 (3d Cir. 2019).  In that case, the language the court needed to apply was on its face ambiguous when two sections of the statute were read in context with each other.  Id. at 234-35.  Such is not the case here.  Defendants have not pointed to another section that clearly makes the definition ambiguous.

Defendants attempt to use the rules of statutory construction to create an ambiguity here where none exists.  The defendants point to various statutory

22

sections that it claims evidence an intention by Congress that independent contractor payments should not be included in the calculation of payroll costs.[9] The court need not refer to these sections, however, as the statute is not ambiguous and the plain language of the statute controls. The court cannot refer to other statutory provisions to create an ambiguity in a statute where no ambiguity exists otherwise. Dir., Off. of Workers' Comp. Progs., 150 F.3d at 292.

Accordingly, based upon the above reasoning, the court finds that the decision of the SBA to deny full forgiveness of the Loan on the ground that plaintiff included the independent contractor expenses in its calculation of payroll costs was an error of law and thus arbitrary and capricious. Plaintiff's motion for summary judgment on this issue will be granted.

---

[9] Other facets of the CARES Act which the defendants cite to for this proposition include:

    a. Independent contractors are eligible for their own loans under the CARES Act;

    b. Based upon the structure of § 636(a)(36)(A)(viii), when Congress intended "and" to mean "and" it used the word "sum" also;

    c. The CARES Act excludes foreign employees from the "payroll costs" calculation, but did not exclude foreign independent contractors. If independent contractors were meant to be included, foreign independent contractors would have also been excluded; and

    d. The manner in which Congress calculated the loans for farmers and ranchers and the different ways in which loans were calculated for farmers and ranchers with employees versus those without employees indicates that "payroll costs" do not include a business's independent contractor costs.

Defendants also point to a number of CARES Act provisions regarding loan forgiveness which they claim anticipate that forgivable payroll costs will include employee compensation but not independent contractor costs. These include:

    a. Reduction for employee layoffs or pay cuts;

    b. Documentation and certification requirements; and

    c. Conformity between forgiveness amount and certification requirements.

## C. Count III – Injunctive Relief

Count III of plaintiff's complaint is an application for a temporary restraining order and temporary or permanent injunction. (Doc. 1, ¶¶ 87-102). Plaintiff's request for a temporary restraining order and temporary injunction will be denied because plaintiff never filed a separate motion for such relief.

The permanent injunction will be denied because injunctive relief is not appropriate. Rather, the proper course of action is to declare that the defendants committed a legal error in denying full forgiveness on the basis of the inclusion of independent contractor expenses in the "payroll costs" calculation and remand the case to the SBA for further action consistent with this opinion. Hasan v. U.S. Dept. of Labor, 545 F.3d 248, 251-52 (3d Cir. 2008); see also NLRB v. Enter. Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Ice Mach., 429 U.S. 507, 522 n. 9, (1977) ("When an administrative agency has made an error of law, the duty of the Court is to 'correct the error of law committed by that body, and, after doing so to remand the case to the (agency) so as to afford it the opportunity of examining the evidence and finding the facts as required by law.' ") (quoting ICC v. Clyde S.S. Co., 181 U.S. 29, 32–33, 21 S.Ct. 512, 45 L.Ed. 729 (1901)).

## D. Count IV – Attorney's fees.

The final count of plaintiff's complaint seeks attorneys' fees under the Equal

Access to Justice Act, ("EAJA") 28 U.S.C. § 2412. (Doc.1, ¶¶ 103-105)

The EAJA provides:

A court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The government bears the burden to establish first that the agency action

giving rise to the litigation was substantially justified, and second, that its litigation

positions were substantially justified. Kiareldeen v. Ashcroft, 273 F.3d 542, 545

(3d Cir. 2001). To be substantially justified the government need not be correct,

but instead must demonstrate "(1) a reasonable basis in truth for the facts

alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a

reasonable connection between the facts alleged and the legal theory advanced."

Id. at 554 (quoting Morgan v. Perry, 142 F.3d 670, 684 (3d Cir. 1998)). The

question of substantial justification is entirely distinct from the question of

whether the government was correct on the merits. Id. Thus, when analyzing the

government's legal positions, "[t]he relevant legal question is 'not what the law now is, but what the Government was substantially justified in believing it to have been.' " Id. (quoting Pierce v. Underwood, 487 U.S. 552, 561 (1988)).

The court finds that the SBA was substantially justified in believing its interpretation of the CARES Act was proper.  Defendants made arguments which, in light of the IFR, were appropriate, although, the court has found that ultimately the defendants were not correct on the merits.

Because the court finds that the SBA's position was substantially justified, the award of attorney's fees under the EAJA will be denied.

**Conclusion**

For the reasons set forth above, the court will grant the plaintiff's summary judgment in part.  The motion will be granted to the extent that the decision of the SBA will be overturned as not in accordance with law and arbitrary and capricious.  The law does not support the SBA's conclusion that independent contractor expenses cannot be included in plaintiff's "payroll costs" of the Loan. The court will therefore vacate the final decision and order, and remand the case to the SBA for further proceedings consistent with this opinion. Specifically, the SBA is instructed that denial of forgiveness of the Loan on the basis that it included payment to independent contractors is not proper.  The SBA should re-evaluate plaintiff's application for forgiveness and include independent contractor

expenses as an appropriate addition to payroll costs. The defendants' motion for summary judgment will be denied. Additionally, plaintiff's request for attorney's fees will be denied. An appropriate order follows.

Date: _12/30/24_

**JUDGE JULIA K. MUNLEY**
**United States District Court**

27